UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SENTIENT JET, LLC, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No. 12-11809-NMG |
| CHRISTOPHER EARLY, | ) ) ) | |
| Defendant | ) ) | |

REPORT AND RECOMMENDATION ON DEFENDANT'S
FIRST MOTION FOR SUMMARY JUDGMENT (DOC. NO. 21)

September 11, 2013

SOROKIN, C.M.J.

Sentient Jet, LLC ("Sentient"), has sued Christopher Early, a former employee who now operates a competing business, alleging, inter alia, that Early misappropriated confidential information and breached confidentiality and non-solicitation provisions of his employment agreement.  See generally Doc. No. 1.  Several months before the close of discovery, Early moved for summary judgment, arguing that the non-solicitation provision of his employment agreement was void as a matter of law.  See generally Doc. No. 21.  The motion was referred to the undersigned for a Report and Recommendation.  Doc. No. 24.  Because the law does not support Early's view, I recommend that his motion for summary judgment be DENIED.

I.   BACKGROUND

Sentient brokers charter jet services for its customers, which typically include wealthy individuals and corporations located all over the world.  Doc. No. 31 at ¶¶ 1, 15.  Early was hired by Sentient in July 2009 as a Sales Director, and later was promoted to Vice President of Sales.

Id. at ¶ 8.  In both positions, Early sold and arranged charter jet services for clients on behalf of Sentient.  Id.  Before joining Sentient, Early had at least one year of prior experience in a similar position with another charter jet company.  Id. at ¶ 39.

When Sentient hired Early, it required him to sign a "Confidentiality, Nonsolicitation, Non-Disclosure Agreement."  Id. at ¶ 10.  The agreement contained a "Non-Solicitation Covenant," the terms of which were subject to some negotiation between Sentient and Early before they were finalized.  Id. at ¶ 13; Doc. No. 21 at ¶ 14.  That clause ultimately provided:

> Employee agrees that *during employment with the Company and for a period of one (1) year following the cessation of employment for any reason*, or one (1) year from the date a court of competent jurisdiction enforces the terms of the Agreement, whichever is later, Employee will not directly or indirectly solicit, attempt to solicit, divert from the Company or transact business with any of the Company suppliers, vendors, or customers *with whom Employee had Material Contact during the last twelve (12) months of Employee's employment with the Company* if the purpose of the solicitation, attempted solicitation, diversion or transaction is to offer products which are the same as or similar to those offered or provided by Employee on behalf of the Company at the time Employee's employment ceased, so long as the Company is continuing to provide those services or products.  *Prior clients of the Employee shall be excluded from this restriction: The clients must be listed as an attachment to this agreement that is mutually agreed upon prior to the start date of the Employee*.

Doc. No. 1-1 at ¶ 5 (emphasis added).  The parties dispute whether, and to what extent, any of Early's "prior clients" were "mutually agreed upon" and properly excluded from the non-solicitation covenant.  See Doc. No. 31 at ¶ 27.

Sentient fired Early in September 2012 based on information which led it to believe he was operating a competing charter jet business and diverting business to it using leads he acquired from Sentient.  Doc. No. 21 at ¶ 31; Doc. No. 31 at ¶¶ 19-24.  Thereafter, Sentient instituted this action, bringing the following claims: 1) misappropriation of confidential, proprietary, and trade secret information; 2) breach of contract; 3) breach of duty of loyalty;

2

4) intentional interference with prospective business relations; 5) conversion; and 6) violation of the Computer Fraud Abuse Prevention Act.  Doc. No. 1 at ¶¶ 29-63.

Early filed his "first motion for summary judgment" in June 2013.  Doc. No. 21.  He appears to seek entry of judgment in his favor with respect to all six of Sentient's claims, arguing they all are "at least in part premised upon the contention that the [Non-Solicitation] Covenant was violated."[1]  Doc. No. 22 at 6.  In his opening brief, Early argued: the covenant is void because it lacks a reasonable geographic limitation, id. at 6-12; the portion of the covenant restricting solicitation of vendors and suppliers is void because it provides no economic benefit to Sentient while imposing undue hardship on Early, id. at 12-13; and he never violated the customer solicitation portion of the covenant,[2] id. at 14.  Sentient responded to each of these contentions in its opposition brief, spending considerable effort demonstrating factual disputes exist regarding whether Early violated the covenant.  See generally Doc. No. 31.  Then, in his reply brief, Early clarified that Sentient's "asserted 'facts' . . . have absolutely no bearing upon the basis for" the pending motion, specifying that his motion turns solely on "whether the . . . covenant in dispute is invalid due to the absence of any geographical scope."  Doc. No. 39 at 1 n.4; see also id. at 2 n.6 (explaining that completing fact discovery is unnecessary for purposes of the motion, which turns on "the plain text of the four corners of the agreement at issue").

The Court will accept Early's characterization of the basis for his motion, and will

---

[1]Although the Court is inclined to agree with Sentient that only a portion of its breach-of-contract claim rises and falls with the validity of the covenant, and that the remaining claims are independent causes of action unaffected by Early's motion, this issue need not be resolved here given the Court's conclusion that the covenant is facially valid.

[2]In this short section of his brief, Early implies he solicited only customers who were his own "prior clients" and, thus, fell within the exclusion contained in the covenant.

consider only whether the non-solicitation covenant is invalid on its face.[3] As set forth below, the covenant is not void as a matter of law.

II.     LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court is "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993). "Trialworthiness requires not only a 'genuine' issue but also an issue that involves a 'material' fact." Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995). A material fact is one which has the "potential to affect the outcome of the suit under applicable law." Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993). For a factual dispute to be "genuine," the "evidence relevant to the issue, viewed in the light most flattering to the party opposing the motion, must be sufficiently open-ended to permit a rational factfinder to resolve the issue in favor of either side." Nat'l Amusements, Inc., 43 F.3d at 735 (internal citation omitted).

III.    DISCUSSION

The issue presented by Early's motion – as he has narrowed it in his reply brief – is a purely legal one: whether the non-solicitation provision in the agreement at issue comports with

---

[3]Based upon the parties' submissions – and the record submitted along with Sentient's opposition in particular – it appears plain that questions of whether any customers were properly excluded from the covenant and whether Early breached the covenant would be premature at this time, as such issues are plainly subject to dispute on the record as it currently stands.

Delaware law governing restrictive covenants.[4]  As the relevant decisions cited by both parties demonstrate, it plainly does.[5]

Under Delaware law, a restrictive covenant such as a non-solicitation provision is valid if: 1) the typical elements of a contract are satisfied; 2) it is "reasonably limited with respect to both geography and time"; and 3) it "advance[s] a legitimate economic interest of the employer." Del. Express Shuttle, 2002 WL 31458243, at *11; see McCann Surveyors, Inc. v. Evans, 611 A.2d 1, 3 (Del. Ch. 1987); cf. Avaya, Inc. v. Ali, No. 12-10660, 2012 WL 2888474, at *7 (D. Mass. July 13, 2012).  For purposes of the pending motion, Early's challenge to the non-solicitation covenant is focused on the second of these prerequisites.[6]  See Doc. No. 39 at 1 n.4.

---

[4]The parties agree that, pursuant to the terms of the agreement, Delaware law controls the interpretation of the covenant.  See Doc. No. 1-1 at ¶ 9(a).

[5]Whether principles of equity ultimately will support Sentient's request for specific performance of the clause is a fact-laden question appropriately resolved at a later date.  See Del. Express Shuttle, Inc. v. Older, No. 19596, 2002 WL 31458243, at *11 (Del. Ch. Oct. 23, 2002) (noting restrictive covenants "are not mechanically enforced," and that if such a covenant is first deemed legally valid, it is subject to enforcement only if an equitable balance of the employer's interests against any harm to the employee favors enforcement).  This question likely will involve issues such as: (i) how many customers, suppliers, and vendors fall within the provision (i.e., the number of such entities with which Early had material contact during his last year at Sentient), and whether that number amounts to an effective ban on Early conducting business at all, as he suggests; and (ii) the nature and scope of any harm Early may experience should the provision be enforced as written.  These are matters of fact relevant to enforcement of the provision, not its facial validity.  They also are plainly disputed, at least at this juncture, and require further exploration in discovery and development in the record.

[6]To the extent Early contends the provision is facially void for not advancing a legitimate economic interest, the Delaware courts consistently have taken the opposite view.  See Research & Trading Corp. v. Pfuhl, No. 12527, 1992 WL 345465, at *12 (Del. Ch. Nov. 18, 1992) (noting Delaware law recognizes employers have legitimate interests in protecting their goodwill and confidential information); Hammermill Paper Co. v. Palese, No. 7128, 1983 WL 19786, at * (Del. Ch. June 14, 1983) (concluding an employer "has a right to protect the good will it bought and fostered through its employees"); Faw, Casson & Co. v. Cranston, 375 A.2d 463, 467 (Del. Ch. 1977) (finding a legitimate purpose of a restrictive covenant is "to protect the employer from loss of business arising out of an employee's profitable association with the former[] employer's

And with respect to that prerequisite, even Early appears to concede – as he must – that a one-year time limitation is reasonable under Delaware law.  See, e.g., Hammermill, 1983 WL 19786, at *6 ("The twelve month limitation . . . is within the parameters of time restrictions accepted by courts of this State.").  As such, the sole question is whether the lack of an explicit geographical limitation renders the provision void.

Early points to a "concession" by Sentient that the covenant contains no explicit limitation as to its geographical scope.  See Doc. No. 22 at 9 (citing a response to Early's requests for admissions).  According to Early, the inquiry should end with Sentient's "fatal" admission.  Id.  Sentient, however, points to Delaware decisions upholding similar provisions that appear to be worldwide in scope where the covenants restrict only solicitation of customers or vendors, rather than the employee's ability to work in a certain profession as a general matter.  Doc. No. 30 at 7-8.  In addition, Sentient notes that even the cases cited by Early support a finding that the provision at issue here is reasonable.  Id. at 9-10.

The language of the non-solicitation covenant, considered in light of all relevant cases cited by both parties, is reasonable and valid under Delaware law despite the absence of an explicit geographical limitation.  First, Sentient undisputedly operates a worldwide business.  Unlike other ventures at issue in certain cases cited by Early, the broad geographical scope of such an operation cannot be addressed via a contract limiting competition or solicitation within a certain radius of a particular location.  See Avaya, 2012 WL 2888474, at * 7 ("Delaware law . . .

---

clientele"); see also Avaya, 2012 WL 2888474, at *7.  The reasoning in all of these cases supports Sentient's view that the covenant here is legitimately aimed at protecting the good will it has built with its clients, vendors, and suppliers – both on its own and through Early as its representative – as well as at protecting confidential information it has amassed related to such entities.  See Doc. No. 32 at ¶¶ 3-9.

condones broad geographic restrictions, up to and including non-competes with a global scope like the one at issue here, when the relevant competitive market is equally broad or global."); Research & Trading Corp., 1992 WL 345465, at *12 ("If . . . the employer's customer base[] extends throughout the nation, or indeed even internationally, and the employee would gain from the employment some advantage in any part of that market, then it is appropriate that an employee subject to a non-competition agreement be prohibited from soliciting those customers on behalf of a competitor regardless of their geographic location.").[7]

Second, the covenant does not preclude Early from contacting *all* of Sentient's customers, vendors, and suppliers; rather, its scope is limited to only those with whom Early had "material contact" during the last twelve months of his employment.  Although not tied to a single geographical location, this limitation enables Early to readily identify the entities at issue and the scope of the restriction.  Such a restriction is not facially unreasonable or void.  See Del. Express Shuttle, 2002 WL 31458243, at * 13 (finding provisions disallowing solicitation of customers with whom an employee worked on behalf of a former employer "inherently establish a geographic limit that ultimately protects the legitimate economic interest of the employer and provide a reasonable and foreseeable basis for ascertaining the territorial scope of the covenant not to compete, even if no geographic limitation is expressly set forth in the agreement").  The

---

[7]Early relies on cases involving smaller-scale operations and/or employees whose previous work activities were limited to a specifiable locality.  See, e.g., Del. Elevator, Inc. v. Williams, No. 5596, 2011 WL 1005181 (Del. Ch. Mar. 16, 2011) (restricting a former sales manager of an elevator company in the mid-Atlantic region from soliciting clients of his former employer within thirty miles of the Newark, DE office from which he previously operated); Knowles-Zeswitz Music, Inc. v. Cara, 260 A.2d 171 (Del. Ch. 1969) (restricting a school musical instrument salesman from competing with his former employer at schools he previously serviced in the county where he worked).

record before the Court simply does not support a finding that the provision, as written, amounts to a nationwide ban preventing Early from working in the charter jet business altogether, even for the relevant twelve-month period. Accordingly, there is no legal basis for concluding the non-solicitation clause is void on its face under Delaware law.

IV.   CONCLUSION

For the foregoing reasons, I respectfully recommend that Early's motion for summary judgment be DENIED.[8]

    /s/ Leo T. Sorokin
Leo T. Sorokin
Chief U.S. Magistrate Judge

---

[8] The parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within fourteen days of receipt of this Report and Recommendation. The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72; 28 U.S.C. § 636(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).